UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOANNE DUNNOM,                    :          NO. 1:02-CV-00024
                                  :
        Plaintiff,                :
                                  :
    v.                            :          **ORDER**
                                  :
                                  :
DAVID BENNETT, et. al,            :
                                  :
        Defendants.               :


        This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 21), Plaintiff's Memorandum in Opposition
(doc. 33), and Defendants' Reply (doc. 35).  The Court will also
consider Plaintiff's Motion to Strike (doc. 36).

**BACKGROUND**

        The following facts have been derived from the various
pleadings, motions, and responses in this matter.  This is a case
of alleged discrimination arising out of Plaintiff's employment
with the City of Cincinnati Water Works Department (doc. 21).
Plaintiff is an African American female who has worked for the City
of Cincinnati since 1989 (Id.).

        It is uncontested that Plaintiff worked as an
administrative assistant for the Cincinnati Police Department, with
good reviews (doc. 33).  On February 21, 2000, Plaintiff was
promoted to the Water Works Department as a Meter Reader (Id.).
Plaintiff was one of a few women who had been promoted to this
department (Id.).  Plaintiff passed her six-month probationary
period as one of approximately twenty-five meter readers in her

division (doc. 21).    Defendant David Bennett, and two others, supervised Plaintiff (Id.).    Plaintiff accuses Bennett of subjecting her to differential treatment, starting during the probationary period (doc. 33).    Plaintiff alleges on several occasions Bennett denied her training opportunities that had been given previous male employees (Id.).    Plaintiff alleges that she used codes she was instructed to use in logs to designate meters that were obstructed or that she could not find, and later was penalized in an appraisal for having done so (Id.).    Similarly, Plaintiff states that she had difficulty with a particular task, opening and finding "Ford Boxes," which she could not open due to lack of arm strength, and which male employees had no difficulty opening (Id.).    Plaintiff alleges that she informed management of her difficulty with the task, but she was denied a pay step increase and rated "does not meet expectations" for her difficulty with such task (Id.).

In addition, Plaintiff states that she complained to Mr. Bennett as early as June 2000 about problems with her knee, although she did not procure a note from her physician for her employer until March 21, 2001 (Id.).    Plaintiff argues that she requested to be placed on a route without steps in order to accommodate her knee problem, and Mr. Bennett refused such request (Id.).    In contrast, Plaintiff states that male employees were granted accommodation in response to their requests (Id.). Similarly, she states male employees were not shouted at in the same fashion that she was after having car problems and failing to

2

complete her route (Id.).

Plaintiff also states that she was denied an increase in salary and rated "does not meet expectations" when her meter reading percentage was 82.7% while her percentage goal was 84.7% (Id.). Plaintiff states that two male employees did not meet percentage goals but were found to have met expectations ( Id.). Plaintiff proffers evidence that a reading of 80% is the minimum objective criterion meter reading percentage, and states that though she met the minimum, she did not receive a "meets expectation" rating in her evaluation (Id.).

Plaintiff was off work from March 26, 2001, through April 4, 2001 (doc. 21). Shortly before her return to work, Plaintiff filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), based on sex and disability discrimination, naming David Bennett as a party (doc. 33). Upon Plaintiff's return to work, Defendant Water Works reassigned her to a light duty clerical position consistent with her doctor's instructions (doc. 21). Plaintiff's new position, which she started on or about April 4, 2001, put her in daily contact with Mr. Bennett (Id.). Plaintiff alleges that Mr. Bennett harassed, retaliated, and discriminated against her until her last day of work, June 14, 2001 (doc. 33). Plaintiff states that until June 6, 2001, Defendant Bennett would bang on a black cabinet behind her desk to get her attention rather than addressing her ( Id.). Plaintiff states that one day she informed Mr. Bennett of an appointment with her doctor at 11:30

3

a.m., which Bennett ignored by giving her work at that time and then telling her she could not leave until it was completed (_Id_.). Plaintiff states that Mr. Bennett told her not to talk with other employees and asked a fellow employee named Nancy not to speak with Plaintiff (_Id_.). Plaintiff states that managers did not give her job assignments, that employees circled her desk, and that Mr. Bennett held her office mail for three days and then threw the open mail on her desk (_Id_.). Plaintiff states that Mr. Bennett refused to acknowledge her on one occasion while, in contrast, greeting a white male (_Id_.). Mr. Bennett admits he told Plaintiff that she did not need a raise because she lived in a nice area (_Id_.). On her last day of work, Plaintiff states that Defendant Bennett called her an "asshole," an allegation that Bennett squarely denies (_Id_.).

Defendants state that on June 11, 2001, employees Myrt Bohl and Patty Burke came to see Plaintiff regarding the charges she filed and to present her with a copy of the City's Americans with Disabilities Act policy (doc. 21). Plaintiff was missing from her desk prior to quitting time (_Id_.). The next day, when the same employees returned, they found Plaintiff sleeping at her desk (_Id_.). Employee Kevin Moore issued Plaintiff an oral reprimand for the sleeping incident (_Id_.).

Finally, Plaintiff proffers affidavit testimony indicating Mr. Bennett stated on a number of occasions that women do not belong in the workplace. Included among this evidence is testimony of the union President, Joe Harrison, indicating that Mr.

4

Bennett belittles and patronizes women, treating females differently than males (doc. 33). Affiant Marilyn Evans stated that Mr. Bennett treats women poorly (<u>Id</u>.). Affiant Josh Hicks stated that on more than one occasion he heard Mr. Bennett state that women did not belong at the Water Works (<u>Id</u>.).

Although Plaintiff left the Cincinnati Water Works after June 14, 2001, she is currently working at the City's police department (doc. 21). The OCRC determined that it was not probable that the City engaged in any discriminatory practice, and the EEOC adopted its findings, issuing a right to sue letter on February 1, 2002 (doc. 21). Plaintiff amended her Complaint on February 6, 2002, asserting claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. 2000(e) as amended by the Civil Rights Act of 1991 (Title VII), and 4112.02(a) and 4112.00 of the Ohio Revised Code (doc. 2).

On February 28, 2003, Defendants filed the present Motion for Summary Judgment, arguing that there are no genuine issues of material fact and they are entitled to judgment as a matter of law (doc. 21).

**ANALYSIS**

**I.  Summary Judgment Standard**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates
> the entry of summary judgment, after adequate
> time for discovery and upon motion, against a
> party who fails to make a showing sufficient
> to establish the existence of an element
> essential to that party's case, and on which
> that party will bear the burden of proof at
> trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).   Conclusory allegations, however, are not sufficient to
defeat a motion for summary judgment. <u>McDonald v. Union Camp Corp.</u>,
898 F.2d 1155, 1162 (6th Cir. 1990).   Furthermore, the fact that the
non-moving party fails to respond does not lessen the burden on the
moving party or the court to demonstrate that summary judgment is
appropriate. <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d
451, 454-55 (6th Cir. 1991).

## II. Discussion

Plaintiff's claims are brought under Title VII of the
Civil Rights Act of 1964 and its Ohio state law analog, Ohio
Revised Code § 4112.   The same evidentiary framework applies to
discrimination claims brought under Title VII, and discrimination
claims brought under Ohio state law. <u>Allen v. Ethicon, Inc.</u>, 919 F.
Supp. 1093, 1098 (S.D. Ohio 1996).

In order to establish a claim of gender discrimination,
Plaintiff may either introduce direct evidence of discrimination or
prove circumstantial evidence that would support an inference of
discrimination.  <u>Kline v. Tenn. Valley Auth.</u>, 128 F.3d 337, 348 (6th
Cir. 1997), <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078,
1081 (6th Cir. 1994); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.
792, 802,(1973); <u>Ackerman v. Diamond Shamrock Corp</u>., 670 F.2d 66
(6th Cir. 1982).  As direct evidence can be difficult to produce,
the law allows for a plaintiff to raise an inference of
discrimination through circumstantial evidence. <u>McDonnell Douglas</u>,
411 U.S. 792 (1973).

Several theories of liability are available under Title

VII, including (1) disparate treatment, in which a member of a class protected by the statute is treated differently than non-members of the class, and the reason is due to the protected status, <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981), (2) harassment that creates an offensive or hostile work environment, <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993), <u>Southerland v. Sycamore</u>, No. C-1-02-162, 2003 U.S. Dist. LEXIS 14260 (S.D. Ohio July 3, 2003), and (3) retaliation for protected activity under the statute, <u>Morris v. Oldham County Fiscal Court</u>, 201 F.3d 784 (6th Cir. 2000). Plaintiff asserts claims under each theory, for which she must establish a <u>prima facie</u> case of discrimination through direct or circumstantial evidence. <u>McDonnell Douglas</u> at 802. In response, Defendants must proffer a legitimate non-discriminatory reason for their actions. <u>Id</u>. If Defendants proffer such a reason, Plaintiff then has the burden to prove that the stated reason is pretextual. <u>Id</u>. In this case, Defendants argue Plaintiff fails to establish a <u>prima facie</u> case under each theory, and that there were legitimate nondiscriminatory reasons for their actions, namely, Plaintiff's performance. Defendants therefore argue Plaintiff's claims fail and should be dismissed.

### A. Plaintiff's Disparate Treatment Claim

To establish a <u>prima facie</u> case of disparate treatment, Plaintiff can either proffer direct evidence of such disparate treatment, or prove such treatment circumstantially. Plaintiff alleges that she can do both.

8

### 1. Proof By Direct Evidence

First, Plaintiff alleges that she has direct evidence of discrimination in the affidavits of Joshua Hicks and Joe Harrison. Direct evidence is evidence, which if believed, proves existence of the fact in issue without inference or presumption.    Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987)(citing Black's Law Dictionary 413 (5th ed. 1979).  The affidavit of Joshua Hicks, a male meter reader, indicates "[o]n more than one occasion I have heard Mr. Bennett make the statement that women did not belong."  The affidavit also indicates his opinion that he worked with a female meter reader, who was excellent, but who was treated differently by David Bennett because she was a woman.   The Court notes particularly that Hicks indicates Mr. Bennett treats individuals differently who have moved into the Water Works Department from other areas of the City, and that a "substantial number of these individuals. . .were women."

The Court finds that the statements of Mr. Hicks do not constitute direct evidence of discrimination.   Even the clearest statement allegedly made by Mr. Bennett, that women did not belong, requires the inference that such alleged opinion directly caused Mr. Bennett to treat Plaintiff differently.  Furthermore, Mr. Hicks indicated that Mr. Bennett carried an animus toward "individuals" who transferred into the department, apparently regardless of the gender of such individuals.

Similarly, the affidavit of Joe Harrison, president of the local union representing Water Works employees, states that he

9

"can see by [Bennett's] demeanor and his actions that he belittles, patronizes and treats women differently than he does male employees." Harrison recounts an incident when Mr. Bennett ignored Plaintiff while greeting a white male. Harrison testifies "from his general knowledge" that he believed Bennett and his staff scrutinized Plaintiff's work more than the work performed by males. The Court finds that these statements, though highly relevant to a circumstantial evidence analysis, do not as a matter of law constitute direct evidence of discrimination. Not all inappropriate comments or statements suggesting discriminatory animus can be considered direct evidence of an employer's discriminatory intent. <u>Smith v. Leggett Wire Co.</u>, 220 F.3d 752 (6th Cir. 2000), <u>Heim v. Utah</u>, 8 F.3d 1541 (10th Cir. 1993), <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635 (11th Cir. 1998).

### 2.  Proof by Circumstantial Evidence

In the absence of direct evidence, Plaintiff may plead her <u>prima facie</u> case for disparate treatment by showing that (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) similarly-situated male employees were treated more favorably. <u>Town v. Michigan Bell Tel. Co.</u>, 455 Mich. 688, 699-700, 568 N.W. 2d 64 (1997). Plaintiff obviously falls within the protected class of the female gender. As for the second prong, the Sixth Circuit has noted that an adverse employment action must be material change in the terms and conditions of employment, and must be more disruptive than a mere convenience or an alteration of job responsibilities. <u>Bowman v. Shawnee State</u>

10

Univ., 220 F.3d 456, 461-62 (6th Cir. 2000).  As for the third prong, "similarly-situated" means that comparable employees are nearly identical in all relevant respects.  Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994).

Defendants argue Plaintiff's allegation that she was denied a pay increase in relation to male employees fails because under city policy, step-ups and salary increases are not automatic (doc. 21).  Defendants argue that Plaintiff's performance had decreased in relation to her probationary period, and that Mr. Bennett told her that if she could improve her meter reading percentage, she would get the pay increase (Id.).  Defendants argue that Plaintiff is not aware of any similarly situated men who were given more favorable treatment, and signal that James Kelly, who started as a meter reader at the same time as Plaintiff, was denied a step increase in February 2001 due to his decreased percentage in meter reading (Id.).  Defendants argue that the two male employees who were found to "have met expectations" while not meeting their goals did not receive pay increases, nor did Mr. Bennett complete their evaluations (doc. 35).  Defendants posit that Plaintiff's argument that she received inadequate training fails because she received ninety hours of training, more hours than a number of male employees (Id.).  Defendants argue that Plaintiff simply does not have a constitutional right to the job assignment of her choice, and therefore, her position that it was unfair for her to be placed on office duty as opposed to a modified route, lacks merit (Id.).

Plaintiff responds that she suffered an adverse action

11

when Defendants' actions upset her to the point where she could work no longer at the Water Works, when she was required to work in the office rather than on a route similar to male employees, when she was denied a step increase in pay, and when she was never offered the same benefits as male employees (doc. 33). Plaintiff argues that her performance met the minimum objective expectation of a reading of 80% (Id.). Plaintiff complains that she complained numerous times to Mr. Bennett about her knee problem, prior to the note from her physician, and unlike males, she was not accommodated with changes in her route (Id.).

The Court finds that a reasonable jury could find Plaintiff received different treatment than similarly-situated males. Mr. Bennett signed off on the evaluations of males who did not meet their goals, but who were deemed to have "met expectations." Plaintiff was closer to reaching her goal than at least one of those males, yet was found to have not met expectations. It is clear that earning a negative rating, alone, is not a materially adverse employment action, Morris v. Oldham County Fiscal Court, 201 F.3d 784, 789 (6th Cir. 2000). However, it is not clear whether Plaintiff's rating was tied to a tangible employment action that Plaintiff could have been in jeopardy of suffering. Nor is it clear whether this rating, alone, was the only action taken by Mr. Bennett against Plaintiff. Regardless of Defendants' arguments that none of the males with whom Plaintiff compares herself obtained raises in compensation in conjunction with their positive evaluations, it is not clear from the record

12

how Plaintiff's rating might have affected future opportunities for advancement or salary increases. Additionally, Plaintiff alleges that she was denied the same training opportunities as her male counterparts. Although Defendants argue that Plaintiff received more hours in training than the males, Defendants do not establish whether the training Plaintiff received was substantively identical to that offered counterpart males.

Moreover, in light of the fact that Plaintiff proffers affidavit testimony of a number of witnesses [1] who state that Mr. Bennett treated women differently, it is not unreasonable to conclude he ignored Plaintiff's request for accommodation for her knee problem over many months, and that, unlike the treatment he accorded to males, he failed to offer her the same sort of modified route changes or training that she desired. Defendants are correct that Plaintiff does not have a constitutional right to the job task

---

[1] Defendants accuse Plaintiff of proffering hearsay statements in the affidavits of Marilyn Evans, Joe Harrison, and Josh Hicks, yet fail to signal to the Court which precise statements they challenge (doc. 35). Plaintiff's citation to the affidavit of Marilyn Evans indicates that Ms. Evans was testifying based upon what she had seen herself, to conclude that Mr. Bennett watches women more closely, treats women poorly, and refuses to help them when they are injured (doc. 33). As noted above, the affidavit of Joe Harrison similarly indicates that Harrison himself had told the City over a two-year period that Mr. Bennett treats females differently than males (Id.). Finally, affiant Joe Hicks states, "On more than one occasion I have heard Mr. Bennett make a statement that women did not belong [at the Water Works]." Joe Hick's testimony includes an admission or admissions by a party-opponent, and thus does not constitute hearsay. Fed. R. Evid. 801(d)(2), NLRB v. Sherwood Trucking Co., 775 F.2d 744, 750 (6th Cir. 1985). The Court finds that none of the statements in Plaintiff's Motion for Summary Judgment should be struck as hearsay.

of her choice.  However, Plaintiff does have a right under case law to be protected from materially adverse disparate treatment based upon her gender.  The Court finds that in this case, a reasonable jury could infer from the facts and the affidavit testimony that Plaintiff was subjected to such disparate treatment.

Defendants argue that they have proffered a legitimate nondiscriminatory reason for denying Plaintiff's step increase, her poor performance (doc. 35).  Similarly, Defendants argue that her assignment to office duty was based upon her own medical restrictions ( Id.).    Finally, Defendants argue that Plaintiff properly received an oral reprimand because she was found sleeping at her desk (Id.).  Defendants argue Plaintiff has not offered evidence that these proffered reasons were pretextual (Id.).

The Court disagrees.  Plaintiff may succeed in showing pretext by showing both that Defendants' proffered reasons are factually untrue, and that discrimination was the real reason for the adverse employment action.  Peters v. Lincoln Electric Co., 285 F.3d 456, 470 (6th Cir. 2002), St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).  Plaintiff can prove pretext by showing that 1)the articulated reasons are not supported by the facts as revealed by the evidence; 2) the articulated reason or reasons did not actually motivate the adverse action; or 3) the articulated reasons were insufficient to warrant the adverse action.  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).  In this case, Plaintiff has proffered admissible affidavit testimony indicating both that Mr. Bennett treated women differently and that

14

the City was on notice of such disparate treatment. A reasonable jury could find that Mr. Bennett was not motivated by legitimate reasons when he rated Plaintiff as having "not met" expectations, when he did not offer to accommodate Plaintiff's knee problem with a modified route, and when he refused Plaintiff's request for training opportunities.

### B. Plaintiff's Hostile Work Environment Claim

In Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), the Supreme Court held that, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the condition of [the victim's] employment and create an abusive working environment.'" Id. at 67, (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). To establish a Title VII offensive work environment sexual harassment claim a plaintiff must establish that the harassment was because of plaintiff's gender and that it created a hostile work environment. Mast v. Imco Recycling of Ohio, Inc., No. 01-3657, 2003 U.S. App. LEXIS 1940, *1, *4-5 (6th Cir. February 3, 2003). To establish a hostile work environment, plaintiff must demonstrate that "the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff." Rabidue v. Osceola Refining Co., 805 F.2d 611, 619 (6th Cir. 1986), cert. denied, 481 U.S. 1041 (1987), see also Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993). In determining whether a plaintiff has met this

15

burden this Court is directed to adopt the perspective of a reasonable person's reaction to a similar environment under like circumstances. <u>Rabidue</u>, 805 F.2d at 620. The Court should examine all the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-88 (1998). Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, she would not have been the object of harassment. <u>Bowman v. Shawnee State University</u>, 220 F.3d 456, 463 (6th Cir. 2000).

Once a plaintiff has established that the harassment was because of sex and that it was sufficiently severe or pervasive, plaintiff must show that her employer bears responsibility for the harassment. <u>Mast</u>, 2003 U.S. App. LEXIS 1940, *7. If the harasser was a co-worker, the employer will be liable only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action. <u>Id</u>. at *8, <u>citing</u> <u>EEOC v. Harbert-Yeargin, Inc.</u>, 266 F.3d 498, 518 (6th Cir. 2001), <u>Courtney v. Landair Transp., Inc.</u>, 227 F.3d 559, 564-65 (6th Cir. 2000).

In this case, Plaintiff alleges she was subjected to daily harassment, after being placed within the office doing secretarial work during the period between April 4, 2001, and June 14, 2001. Plaintiff states Defendant Bennett would bang on a black

16

cabinet behind her desk to get her attention rather than addressing her, that he interfered with a scheduled doctor appointment, limited her interaction with other employees, and ignored her on some occasions while yelling at her on other occasions. Plaintiff states she was denied job assignments, that employees circled her desk to monitor her activity, and that Mr. Bennett held her office mail for three days and then threw the open mail on her desk. Plaintiff states Bennett told her that she did not need a raise because she lived in a nice area. Finally, Plaintiff argues that the alleged encounter on her last day of work, when Bennett allegedly called her an "asshole," constitutes harassment severe enough to constitute a hostile work environment.

The Court finds that Plaintiff has raised a genuine issue of material fact as to whether she was subjected to hostile work environment sexual harassment. A reasonable person, in light of Plaintiff's affidavits, might very well find that Bennett's alleged conduct was sex-based. A reasonable juror could further conclude that such conduct, in its totality, might unreasonably interfere with Plaintiff's work performance. The parties obviously dispute whether Bennett ever called Plaintiff an "asshole." The jury can make a credibility determination of who is telling the truth, and if the jury determines that Bennett said such a thing, the jury could find such a statement severe in nature, taking into consideration the facts of this case. For these reasons, the Court finds a grant of summary judgment on Plaintiff's sexual harassment claim inappropriate.

## C.  Plaintiff's Retaliation Claim

The elements of a <u>prima facie</u> case of retaliation are (1) Plaintiff engaged in an activity protected by Title VII, (2) the exercise of her rights was known to the Defendants, (3) the Defendants took an employment action adverse to Plaintiff or that Plaintiff was subjected to a severe or pervasive retaliatory harassment by her Supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action. <u>Morris v. Oldham Fiscal Court</u>, 201 F.3d 784, 791 (6th Cir. 2000). Plaintiff argues that she engaged in protected activity by complaining to Mr. Bennett's supervisors about his treatment of women, by complaining to union leader Joe Harrison, and by filing OCRC charges on May 29, 2001 (doc. 33).  Plaintiff states that after her complaints, she was ignored, harassed, belittled, and called "an asshole" (<u>Id</u>.).  Plaintiff further posits the City has not articulated any legitimate nondiscriminatory reasons for Mr. Bennett's actions during the forty days that she worked in the office (<u>Id</u>.).

For the same reasons that the Court denies Defendants' attack on Plaintiff's hostile environment claim, the Court must deny Defendants' attack on Plaintiff's retaliation claim.  Although Defendants argue that Plaintiff has not established an adverse employment action, she simply does not need to if she can establish that she was subjected to severe or pervasive retaliatory harassment by her supervisor.  The Court finds that a reasonable jury could find Plaintiff was indeed subjected to such harassment

in response to her protected activity.  The Court similarly finds that though Defendants have articulated legitimate reasons for other actions taken during the forty-day period in which Plaintiff was in the office, Defendants have not been able to proffer legitimate reasons for Mr. Bennett's alleged actions.

### D.  David Bennett's Assertion of Qualified Immunity

Qualified immunity is a doctrine that protects "government officials acting in their official capacities from damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A ruling on qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Hunter v. Bryant, 502 U.S. 224, 226 (1981).  Such immunity is an entitlement not to stand trial, not a defense from liability.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The qualified immunity analysis involves two steps. Saucier v. Katz, 533 U.S. 194, 200 (2001).  The first step is to determine whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry.  Id. at 201.  To determine whether the facts alleged show that a constitutional right has been violated, the court must take the facts in the light most favorable to the party asserting the injury.  Id. citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

If a violation could be made out on a favorable view of the injured party's facts, the second step is to ask whether the right was clearly established. <u>Id</u>. This inquiry, the Supreme Court has instructed, "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id</u>. The Supreme Court has directed that "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001) <u>citing</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999).

Defendants argue that in this case Plaintiff has not identified a clearly established constitutional right that Bennett has violated, nor has alleged any conduct that would form the basis for concluding that he violated such a right (doc. 21). Defendants argue that there is no constitutional right to pay increases or to light duty assignments of one's choice (<u>Id</u>.). Plaintiff responds that Defendant Bennett surely knew that he could not harass and discriminate against Plaintiff because of her gender (doc. 33). Plaintiff signals that Bennett has had sexual harassment training (<u>Id</u>.).

The Court finds Plaintiff's position on qualified immunity well-taken. Accordingly, the Court denies Defendants' invocation of the doctrine on behalf of David Bennett.

### E. Plaintiff's Ohio State Law Claims

Defendants also argue Plaintiff's state law claims fail, for the same reasons that they argue Plaintiff's federal claims

20

fail, under the theory that federal case law interpreting Title VII is generally applicable to cases involving allegations of Ohio Revised Code 4112 (doc. 21)(citing Fenton v. Hisan, 174 F.3d 827, 829 (6th Cir. 199), Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm., 61 Ohio St. 3d 607 (Ohio 1991)). As the Court has rejected Defendants' arguments attacking Plaintiff's federal claims, Plaintiff's state claims similarly withstand summary judgment.

### F. Bennett's Liability in His Individual Capacity Under Title VII.

Defendants argue, and Plaintiff concedes, that Plaintiff's Title VII claims against David Bennett in his individual capacity cannot go forward, because such claims can only proceed against individuals who otherwise qualify as employers. Bennett was Plaintiff's supervisor and not her employer. Wathen v. General Electric Co., 115 F.3d 400, 405 (6th Cir. 1997)("an individual employee/supervisor, who does not qualify as an 'employer,' may not be held personally liable under Title VII.") However, Plaintiff argues, and the Court finds well-taken, that the Complaint pursues Mr. Bennett in his individual capacity under Ohio law, which recognizes individual liability. Genaro v. Central Transport, Inc., 84 Ohio St.3d 293 (1999).

### CONCLUSION

The Court concludes that a jury could find through circumstantial evidence that Plaintiff suffered adverse disparate treatment while working under Defendant Bennett. The Court further

finds that a jury could infer Plaintiff was subjected to a hostile work environment because of her sex and/or in retaliation for her protected Title VII complaints. Defendant Bennett is not entitled to qualified immunity because a reasonable person in his position would know that it was illegal to harass and discriminate against Plaintiff because of her gender. Plaintiff's state law claims, similarly to her federal claims, withstand Defendants' challenge. Finally, Defendant Bennett cannot be held liable in his individual capacity under Title VII, and such claim is dismissed. However, because Ohio law recognizes individual liability for violation of Ohio Revised Code § 4112, Plaintiff's state law discrimination claims against Defendant Bennett are properly before the Court.

Accordingly, the Court DENIES IN PART Defendants' Motion for Summary Judgment (doc. 21) as to Plaintiff's Title VII disparate treatment, hostile environment sexual harassment and retaliation claims, and all of Plaintiff's state law discrimination claims pursuant to Ohio Revised Code § 4112, and GRANTS IN PART Defendants' Motion as to Plaintiff's Title VII claims against Defendant Bennett in his individual capacity (doc. 21). Having denied the greater balance of Defendants' Motion, the Court finds it unnecessary to reach Plaintiff's Motion to Strike (doc. 36), which the Court DENIES as MOOT.

SO ORDERED.

Dated: October 1, 2003          s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge

22